RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

**19-1857**

GEORGE MARVASO;  MARY MARVASO; GEORGE F. MARVASO, SUNDAY GAINS,

       *Plaintiffs-Appellees*,

   *v.*

RICHARD SANCHEZ,

       *Defendant-Appellant*.

> Nos. 19-1857/1870/1882

**19-1870/1882**

GEORGE MARVASO;  MARY MARVASO; GEORGE F. MARVASO,

       *Plaintiffs-Appellees*,

   *v.*

JOHN ADAMS and MICHAEL J. REDDY, JR. (19-1882);
MICHAEL J. REDDY, SR. (19-1870),

       *Defendant-Appellant*.

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
Nos. 4:18-cv-12193 (19-1857); 4:18-cv-12442 (19-1870/1882)—Linda V. Parker, District Judge.

Argued:  April 30, 2020

Decided and Filed:  August 21, 2020

Before:  COLE, Chief Judge; CLAY and NALBANDIAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant Sanchez. Michael M. McNamara, FAUSONE BOHN, LLP, Northville, Michigan, for Appellant Reddy, Sr. in 19-1870. Stanley I. Okoli, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellants Adams and Reddy, Jr. in 19-1882. Wolfgang Mueller, WOLF MUELLER LAW, Novi, Michigan, for Appellees. **ON BRIEF:** John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant Sanchez. Michael M. McNamara, Benjamin A. Tigay, FAUSONE BOHN, LLP, Northville, Michigan, for Appellant Reddy, Sr. Stanley I. Okoli, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellants Adams and Reddy, Jr. in 19-1882. Wolfgang Mueller, WOLF MUELLER LAW, Novi, Michigan, for Appellees.

CLAY, J., delivered the opinion of the court in which COLE, C.J., joined. NALBANDIAN, J. (pp. 16–23), delivered a separate dissenting opinion.

_____

**OPINION**

_____

CLAY, Circuit Judge. This 42 U.S.C. § 1983 action arises from a criminal investigation of Plaintiffs for a fire that occurred at their restaurant in Westland, Michigan. In Case No. 19-1882, Defendants John Adams and Michael Reddy Jr. appeal the district court's denial of their motion to dismiss Plaintiffs' civil conspiracy claim on qualified immunity grounds. In Case No. 19-1870, Defendant Michael Reddy Sr. appeals the district court's denial of his motion to dismiss Plaintiffs' civil conspiracy claim for failure to state a claim on which relief can be granted. And in Case No. 19-1857, Defendant Richard Sanchez appeals the district court's denial of his motion to dismiss Plaintiffs' Fourth Amendment unlawful search and seizure claim on qualified immunity grounds. For the reasons that follow, we dismiss Reddy Sr.'s appeal for lack of jurisdiction and affirm the district court's order with respect to the other Defendants.

**BACKGROUND**

**A. Plaintiffs' Civil Conspiracy Allegations**

In August 2018, Plaintiffs sued Defendants John Adams, Michael Reddy Jr., and Michael Reddy Sr. under § 1983, claiming that those three individuals engaged in an unlawful civil conspiracy to falsify evidence and thereby wrongfully cause Plaintiffs to be criminally investigated for homicide by arson. *See Marvaso v. Adams*, No. 4:18-cv-12442, 2019 WL 3003641 (E.D. Mich. July 10, 2019). Their first amended complaint alleged the following facts:

Plaintiffs lease and operate a restaurant called Marvaso's Italian Grille. The restaurant is adjoined by a charity pool hall and poker facility, Electric Stick, which Plaintiffs also lease and operate. On the morning of May 8, 2013, a fire broke out in the kitchen of Marvaso's and spread to Electric Stick. Within ten minutes of receiving the emergency calls, the City of Wayne-Westland Fire Department responded. The firefighters eventually succeeded in putting out the fire, but in the process a probationary firefighter, Brian Woelke, died from smoke and soot inhalation.

The Michigan State Police Department initially offered to investigate the cause and origin of the fire, but Defendant John Adams (the Wayne-Westland Fire Marshal) and Defendant Michael Reddy Jr. (the Wayne-Westland Fire Chief) declined. They chose instead to have the Fire Department conduct the investigation itself. Within two days, Adams completed his on-scene investigation. He found no evidence of accelerants. Two other investigators, one representing Plaintiffs' landlord and the other representing Plaintiffs' insurer, also investigated the cause of the fire. They each found the cause of the fire to be "undetermined."

From May 8, 2013 until June 30, 2013, the Michigan Occupational Safety and Health Administration (MIOSHA) investigated Brian Woelke's death. It concluded that his death resulted, at least in part, from the Fire Department's multiple violations of health and safety regulations. For example, it found that the Department did not establish and implement written procedures for emergency operations, including a "two-in/two-out" rule, and failed to follow procedures for issuing a mayday call as soon as the firefighters exited the building with one firefighter missing. As a result, MIOSHA cited the Fire Department and assessed it a

$3,500 fine.  In a September 2013 letter, the Fire Department admitted its violations and agreed to pay the fine.

Meanwhile, according to Plaintiffs, Fire Marshal Adams, Fire Chief Reddy Jr., and his father, retired Fire Chief Michael Reddy Sr., were planning a scheme to try to divert attention away from the Fire Department for its involvement in Woelke's death.  At some point during the period between June 27, 2013 and early September 2013, those three individuals met and had a least one conversation during which they agreed to change the cause of the fire from accidental or undetermined to "incendiary."  They knew that doing so would likely trigger an arson and homicide investigation into Plaintiffs' role in the fire.  Prior to this conversation, Reddy Sr. had taken the Marvasos' daughter, Sunday Gaines, to lunch and told her, "You know I would do anything to protect my family."  (No. 4:18-cv-12442, R. 22, Pg. ID 109.)  In or about mid-September 2013, Fire Marshal Adams had lunch with a Westland City Council member.  Despite having previously told the council member that the cause of the fire was electrical, Adams said he was changing his conclusion to incendiary.  When the council member asked why Adams was changing his report, Adams responded, "Because a firefighter died, Bill." (*Id.* at Pg. ID 111.)

In November 2013, "despite having received no new evidence," Adams "suddenly reversed course, concluding that the fire had an incendiary cause." (*Id.* at Pg. ID 112.)  Adams then, in furtherance of the conspiracy, knowingly submitted the false fire report to the Michigan State Police.  Doing so triggered an unjustified homicide investigation into Plaintiffs, which resulted in the search and seizure of their property, loss of employment, and "inability to rebuild their family business" because of the loss of insurance proceeds.  (*Id.* at Pg. ID 115–16.)  Plaintiffs were never arrested for any involvement in the fire and no charges against them were ever brought.  According to Plaintiffs, Adams' intentionally false report was the only evidence of any possible wrongdoing by Plaintiffs.  They allege that their damages, including the searches of their homes and seizure of their property, occurred as a direct result of this false report.

## B. Plaintiffs' Search and Seizure Allegations

In a separate lawsuit, Plaintiffs sued Defendant Lieutenant Richard Sanchez, alleging that he falsified information in his application for a warrant to search Plaintiffs' homes and illegally

searched their homes without probable cause to do so, in violation of the Fourth Amendment. *See Marvaso v. Sanchez*, No. 4:18-cv-12193, 2019 WL 3003681 (E.D. Mich. July 10, 2019).

The first half of Plaintiffs' complaint against Sanchez essentially mirrors their complaint against Reddy Sr., Reddy Jr. and Adams. They alleged the circumstances surrounding the fire and Brian Woelke's death described above. They said that within two days of the fire, Adams concluded that the fire was not caused by accelerants. They also alleged that two other investigators found the cause of the fire to be "undetermined." Although they did not include their allegations regarding the conspiratorial conversation between Adams, Reddy Jr., and Reddy Sr., they did allege that sometime in November 2013, despite receiving no new evidence, Adams changed his conclusion regarding the cause of the fire to "incendiary."

> In four paragraphs, Plaintiffs then asserted their allegations against Lieutenant Sanchez:
>
> 41. On or about December 12, 2013, Defendant, Sanchez, swore out an affidavit in support of a search warrant to seize numerous items from the homes of George and Mary Marvaso, Geo Marvaso, and Sunday Gains.
>
> 42. The affidavit to support the search warrant lacked the necessary specificity to warrant a person of reasonable caution to conclude that evidence of criminal conduct would be in the stated place to be searched.
>
> 43. The facts to support the search warrant were knowingly false or were made with reckless disregard for the truth and did not provide probable cause for the search warrant and the invasion of Plaintiffs' homes.
>
> 44. But for Sanchez['s] intentionally and/or recklessly-made false statements, there would have been no probable cause to secure a search warrant, because there would have been no evidence of a crime.

(No. 4:18-cv-12193, R. 1, Pg. ID 10 (emphasis removed).) Plaintiffs did not specify which statements in Sanchez's affidavit were supposedly false.

## C. Procedural History

Defendants Adams and Reddy Jr. moved to dismiss Plaintiffs' claim against them pursuant to Federal Rule of Civil Procedure 12(c). They argued that Plaintiffs' allegations were insufficient to support a § 1983 civil conspiracy claim and in any event, they were entitled to qualified immunity from suit. Defendant Reddy Sr. also moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that he did not act under color of state law for

purposes of § 1983 liability because he had retired as the Wayne-Westland fire chief in 1998 and was not a public official at the time of the alleged conspiracy.

The district court denied Defendants' motions to dismiss. It found that Plaintiffs plausibly alleged each element of their civil conspiracy claim, and held that Reddy Sr., a private citizen, could be held liable under § 1983 because he willfully participated in a conspiracy with state actors. *See, e.g.*, *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983."). Defendants now seek to appeal that decision.

Defendant Lieutenant Sanchez also sought to dismiss Plaintiffs' illegal search and seizure claim against him. He moved for dismissal pursuant to Rule 12(b)(6) or in the alternative for summary judgment pursuant to Rule 56. Sanchez argued a single ground for dismissal: that he is entitled to qualified immunity because he relied "in objective good faith" on a judicially approved warrant in conducting the searches. *See Sanchez*, 2019 WL 3003681, at *4 ("Lieutenant Sanchez makes one argument in support of his motion to dismiss. Specifically, he claims that because a judicial officer issued the search warrants, he is entitled to qualified immunity."). The district court found this argument seriously misguided, given that the essence of Plaintiffs' complaint is that Sanchez lied when securing that warrant—i.e., that he acted in bad faith. It accordingly denied Sanchez's motion, finding that he was not entitled to qualified immunity on the ground he asserted. Lieutenant Sanchez now appeals that decision.

## DISCUSSION

### A.  Michael Reddy Sr. (Case No. 19-1870)

We begin by analyzing Michael Reddy Sr.'s appeal, as his is the easiest to resolve. Ordinarily, this Court does not have jurisdiction to review a district court's non-final order denying a defendant's motion to dismiss. *Courtright v. City of Battle Creek*, 839 F.3d 513, 517 (6th Cir. 2016) (citing 28 U.S.C. § 1291). There is a limited exception to this rule for orders denying qualified immunity to a public official. *Id.* at 517–18; *accord, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009). However, Reddy Sr. was not a public official either at the time of

Plaintiffs' alleged constitutional injury or at present.  Instead, as he explains in his motion to dismiss, he retired as the Wayne-Westland Fire Chief in 1998.  Accordingly, although he is still subject to § 1983 liability, he is not entitled to qualified immunity from suit.  *See, e.g.*, *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698 (6th Cir. 1996) ("[A] party who is not a public official may be liable under 42 U.S.C. § 1983 and yet not be entitled to qualified immunity because, if not a public official, the reason for affording qualified immunity does not exist." (citing *Wyatt v. Cole*, 504 U.S. 158 (1992))).  Because the exception for qualified immunity appeals does not apply and no other basis for appellate jurisdiction exists,[1] we dismiss Reddy Sr.'s appeal for lack of jurisdiction.

### B.  John Adams and Michael Reddy Jr. (Case No. 19-1882)

We next turn to Adams' and Reddy Jr.'s appeal.  Unlike Reddy Sr., Adams and Reddy Jr. were public officials at the time of the alleged conspiracy and they moved for dismissal, in part, on the grounds of qualified immunity.  Therefore, we have jurisdiction over their appeal to determine whether Plaintiffs' complaint states a viable claim for relief.  *See, e.g.*, *Iqbal*, 556 U.S. at 671–75.

### 1.  Standard of Review

This Court reviews *de novo* a district court's denial of a defendant's motion to dismiss on qualified immunity grounds.  *Courtright*, 839 F.3d at 518.  A motion to dismiss is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Thus,

---

[1]We have sometimes exercised pendent jurisdiction over claims that are "inextricably intertwined" with the qualified immunity issue.  *Vakilian v. Shaw*, 335 F.3d 509, 521 (6th Cir. 2003); *accord Meals v. City of Memphis*, 493 F.3d 720, 727 (6th Cir. 2007).  Two claims are "inextricably intertwined" if deciding one necessarily decides the other.  *Vakilian*, 335 F.3d at 521; *accord Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013).  Because our resolution of the claims against the other defendants does not necessarily decide those against Reddy Sr., there is no reason for us to exercise pendent jurisdiction over Reddy Sr.'s appeal.

when evaluating a complaint's sufficiency, we accept its factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

In order to overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored. *See, e.g.*, *Courtright*, 839 F.3d at 518 ("Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015))); *see also Wesley*, 779 F.3d at 433 ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." (collecting cases)). Instead, even though we retain jurisdiction over this type of appeal, this Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief. *See Courtright*, 839 F.3d at 524; *Wesley*, 779 F.3d at 437.

### 2. Civil Conspiracy

The district court correctly held that Plaintiffs sufficiently pleaded each element of their civil conspiracy claim. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). In order to survive dismissal, Plaintiffs needed to allege facts that, when accepted as true, would allow a juror to find that "'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis*, 489 F.3d at 290). "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material

facts will not be sufficient to state such a claim under § 1983.'" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).

As the district court found, Plaintiffs' complaint sufficiently alleges that a single plan existed: "to draw attention from the Wayne-Westland Fire Department's deficiencies that resulted in Woelke's death by suggesting that Plaintiffs intentionally set the fire and triggering a criminal investigation of Plaintiffs." *Marvaso*, 2019 WL 3003641, at *5. It further alleges that Defendants shared a conspiratorial objective to deflect attention away from the Fire Department by falsifying Adams' cause and origin report, which would likely cause an unjustified criminal investigation into Plaintiffs. *See id.* "Finally, Plaintiffs allege an overt act committed in furtherance of the conspiracy: Fire Marshal Adams submitting a false fire origin and cause report that concluded the fire had an incendiary cause" to the Michigan State Police. *Id.*

Defendants respond that Plaintiffs cannot show that a single plan existed because Defendants were not directly involved in the Michigan State Police's decision to investigate Plaintiffs. They say that once the case was transferred to the Michigan State Police, Defendants "lost sight of it, played no role in it and made no contributions to it. [Defendants] could not have anticipated the ultimate outcome of the investigation, just as they could not have envisioned that [Plaintiffs] would be served with search warrants in the course of the investigation." (No. 19-1882, Appellants' Br. at 24.) The district court construed this argument as disputing causation.

"Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation." *Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011); *accord, e.g.*, *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007); *see also Imbler v. Pachtman*, 424 U.S. 409, 418 (1976) (explaining that § 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them"). Plaintiffs easily meet that burden here, at least for purposes of overcoming Defendants' motion to dismiss. Plaintiffs allege that submitting Adams' false report (i.e., the conspiracy's overt act) was the but-for cause of the criminal investigation into Plaintiffs and the corresponding search of their homes. According to the complaint, without the false report, Plaintiffs' homes would not have

been searched nor their property seized as part of the investigation. This is sufficient to allege causation in fact.

With regard to proximate causation, the key issue is foreseeability. *Powers*, 501 F.3d at 609; *United States v. Martinez*, 588 F.3d 301, 319 (6th Cir. 2009). And as the district court found, "[a]t this stage of the proceedings, based on the facts in Plaintiffs' First Amended Complaint, a reasonable jury could find it foreseeable that search warrants would be sought relying on Fire Marshal Adams' alleged false report in connection with the criminal investigation." *Marvaso*, 2019 WL 3003641, at *6. To be sure, at the summary judgment stage, Defendants may be able to put on evidence that defeats Plaintiffs' allegations of proximate cause. For example, if Defendants offer uncontroverted evidence of a superseding cause that cuts off the otherwise foreseeable chain of causation, then the district court might find that they are entitled to judgment as a matter of law. However, at this stage of the proceedings, Plaintiffs have sufficiently alleged that Defendants' conspiracy was the cause in fact and proximate cause of their constitutional injury, and any further causal weakness should be considered at the summary judgment stage rather than on a motion to dismiss. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) ("[S]ince 'we presume that general allegations embrace those specific facts . . . necessary to support the claim,' other causal weaknesses will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)." (quoting *NOW v. Scheidler*, 510 U.S. 249, 256 (1994))).

Defendants' other arguments for dismissal are likewise meritless. They argue that Plaintiffs' civil conspiracy claim is barred by the intracorporate conspiracy doctrine, relying on this Court's recent decision in *Jackson v. City of Cleveland*, 925 F.3d 793, 817–20 (6th Cir. 2019). In *Jackson*, we held that the intracorporate conspiracy doctrine, which provides that members of the same legal entity acting within the scope of their employment cannot form a conspiracy as two separate "people," applies to claims brought under § 1983. *Id.* at 819. But we also recognized a broad exception to the doctrine's applicability "where the defendants were alleged to have been acting outside the scope of their employment." *Id.* (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994)). Defendants do not dispute that falsifying a fire and origin report would be outside of Adams' and Reddy Jr.'s scope of

employment.   And even if they were to dispute that allegation, such an argument should be considered on a motion for summary judgment, as in *Jackson*, rather than on a motion to dismiss. Moreover, Reddy Sr. was not employed by the Wayne-Westland Fire Department at the time of the alleged conspiracy, and so the doctrine would not bar Plaintiffs' claim that Adams and Reddy Jr. conspired with him.

Defendants further argue that Plaintiffs' complaint "lacks the requisite specificity" and fault Plaintiffs for not alleging that Defendants "had any kind of animosity" towards Plaintiffs. (No. 19-1882, Appellants' Br. at 26–27.)  But animosity is not an element of a civil conspiracy claim.  *See Revis*, 489 F.3d at 290.  And even if it were, we would find that Plaintiffs have sufficiently alleged that Defendants submitted falsified evidence to the state police for the very purpose of triggering an unjustified criminal investigation into Plaintiffs.  In addition, Plaintiffs' complaint includes specific and plausible facts regarding Defendants' conspiratorial conversation and agreement, in addition to the overt acts taken in furtherance of that conspiracy.  The issue that Defendants appear to take with Plaintiffs' allegations is whether or not Plaintiffs will be able to prove those allegations at later stages of the proceedings, not whether those allegations state a plausible claim for relief.  *Cf. Twombly*, 550 U.S. at 555–57; *Iqbal*, 556 U.S. at 678–80.

For these reasons and those given in the district court's order, Plaintiffs have adequately alleged that Defendants Adams and Reddy Jr. engaged in an unlawful conspiracy to fabricate evidence and thereby caused Plaintiffs' constitutional injury.  Moreover, as the district court found, it was certainly clearly established at the time of Plaintiffs' constitutional injury that the "knowing fabrication of evidence violates constitutional rights."  *Marvaso*, 2019 WL 3003641, at *6 (citing *Mills v. Barnard*, 869 F.3d 473, 486 (6th Cir. 2017); *Gregory v. City of Louisville*, 444 F.3d 725, 744 n.8 (6th Cir. 2006)).  And in any event, as noted above, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."  *Wesley*, 779 F.3d at 433; *see, e.g.*, *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) ("[I]f the qualified immunity questions presented are fact-intensive, the record may not be adequately developed to evaluate the defense at the pleading stage under Rule 12(b)(6)."); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) ("Absent any factual development beyond the allegations in a

complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely govern[ed]' by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not." (alteration in original and citations omitted)).

## C.  Lieutenant Sanchez (Case No. 19-1857)

We turn then to Plaintiffs' separate action against Lieutenant Sanchez.  As noted above, Plaintiffs allege that Lieutenant Sanchez made materially false statements and omissions in his application for a warrant to search Plaintiffs' homes.  It is clearly established in this circuit that a search of a plaintiff's residence must be conducted pursuant to a warrant, "unless both 'probable cause plus exigent circumstances' exist." *United States v. McClain*, 444 F.3d 556, 561 (6th Cir. 2005) (quoting *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam)).  And, as relevant here, it was clearly established at the time of Sanchez's alleged conduct that "[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court." *Wesley*, 779 F.3d at 433 (alteration in original) (quoting *Gregory*, 444 F.3d at 758).

Nevertheless, Sanchez moved to dismiss Plaintiffs' complaint against him in the district court by arguing that he was entitled to qualified immunity because he searched Plaintiffs' homes pursuant to a judicially secured warrant.  He attached his search warrant affidavit as an exhibit to his motion.**[2]**  Sanchez's search warrant affidavit first stated that "[a]lmost immediately after the fire was extinguished, Westland Police received tips that the fire was suspicious and most likely an arson fire."  (No. 4:18-cv-12193, R. 7-1, Pg. ID 45.)  It stated that a bar patron named Andrew Baldoni said that Plaintiffs had placed construction materials in the ceiling of the building and started the fire themselves.  However, in an interview with police, Baldoni denied having actual knowledge of the origin of the fire and was simply repeating the local gossip.

---

**[2]**The district court considered Sanchez's affidavit when ruling on his motion to dismiss because it was referred to in Plaintiffs' complaint and is central to Plaintiffs' claims against Sanchez. *See Marvaso*, 2019 WL 3003681, at *2 ("When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." (alterations in original) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008))).

The affidavit further provided that another person, Sean Quigley, reported to police that he had seen two vehicles in the restaurant's parking lot a few hours before the fire (i.e., very early in the morning), and Fire Marshal Adams reported that he saw George Marvaso Jr. driving a vehicle that matched one of the descriptions. The affidavit next stated that a relative of the Marvasos, Robert Mulka, told sheriff's deputies that George Marvaso, Sr. "was distraught over the fire because it was supposed to be an insurance job and no one was supposed to get hurt." (*Id.* at Pg. ID 46.) The affidavit then went on to describe Fire Marshal Adams' false report, discussed above. It stated, "In his cause an[d] origin report, Adams described finding two points of origin in the building. . . . He concluded and opined that the fire was incendiary in nature and resulted from an 'open flame' applied by human hands to combustibles to start this fire." (*Id.*)

Finally, the affidavit summarized the Marvasos' financial situation. It stated that George Marvaso Sr. "had been in bankruptcy since 2007 and was currently making monthly payments to satisfy his long term debt." (*Id.*) It provided that Marvaso was going through financial difficulties at the time of the fire, owed overdue property and business taxes, and had increased the insurance coverage on his businesses from $400,000 to $600,000 three to four months before the fire.

In their response to Sanchez's motion to dismiss, Plaintiffs moved to amend their complaint to add further allegations regarding the specific false statements. They argued that to the extent the district court construes Sanchez's motion as a motion for summary judgment and considers the search warrant affidavit in its ruling, it should deny the motion as premature because no discovery had occurred. They claimed that discovery would give them more time to explore the following false statements and omissions: (1) Sanchez's omission that two investigators found that the origin of the fire was "undetermined"; (2) Sanchez's false statement that Mulka told the sheriff's deputy that he believed Plaintiffs started the fire and it was supposed to be an insurance job;[3] and (3) Sanchez's false portrayal of Plaintiffs as in financial distress and his omission of information relating to their financial health and recent documented renovations to the property.

---

[3]Plaintiffs attached an affidavit from Robert Mulka to their response to Sanchez's motion to dismiss. Mulka's affidavit denies ever making the statements that Sanchez attributed to him.

The district court did not rule on Plaintiffs' motion to amend because it found that Sanchez had forfeited any argument that Plaintiffs' allegations were insufficient by failing to raise it in his motion to dismiss. *See Marvaso*, 2019 WL 3003681, at *5 n.2. Instead, it denied Sanchez's motion to dismiss by rejecting the single ground raised by Sanchez: that he relied on a judicially secured warrant in good faith, and therefore was immune from suit. The district court was correct in doing so.

Generally, "[p]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989). Moreover, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (footnote omitted) (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)).

However, there is an important exception to this general rule that provides that "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey*, 876 F.2d at 1243. That is precisely the situation that Plaintiffs allege here. And yet, in his motion to dismiss, Sanchez simply asserted that he relied on the warrant in good faith and did not make any materially false statements or omissions. But that argument has nothing to do with the sufficiency of Plaintiffs' complaint or adequacy of their allegations regarding Sanchez's bad faith. Instead, to the extent that Sanchez seeks to argue that Plaintiffs cannot demonstrate a genuine factual dispute on this issue, he can make that argument in a motion for summary judgment once discovery has occurred.**4** *See* Fed. R. Civ. P. 56; *see*

---

**4**The dissent claims that Sanchez argued that, even absent his alleged bad faith falsities and omissions, the warrant was supported by probable cause. The district court did not construe Sanchez's motion as making this argument, and we agree with the district court that he did not. The dissent points to one sentence from Sanchez's reply to Plaintiffs' response to his motion to dismiss in order to say that he has preserved this argument. But the dissent takes that one statement out of context. Placing it in its proper context reveals that it was nothing more than one comment in the course of arguing that the *Messerschmidt* exception for reliance on a warrant secured in

*also, e.g.*, *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) ("The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery."). In short, Sanchez's motion to dismiss did not challenge the sufficiency of Plaintiffs' allegations, and if construed as a motion for summary judgment, it was premature. Sanchez is not entitled to qualified immunity at this time.

## CONCLUSION

For the reasons set forth above, we **DISMISS** Reddy Sr.'s appeal for lack of jurisdiction and **AFFIRM** the district court's orders as to Adams, Reddy Jr., and Lieutenant Sanchez.

---

objective good faith should apply. And in any event, we do not agree with the dissent that a single statement made in a reply to a plaintiff's response to the defendant's motion to dismiss would preserve the argument for our review. "The case precedent in this circuit instructs courts to withhold judgment on issues not fully developed by the briefs or in the record. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) (quoting *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 823 (6th Cir. 2002)).

---

**DISSENT**

---

NALBANDIAN, Circuit Judge, dissenting.  Even taking Plaintiffs' factual allegations as true, Sanchez, Adams, and Reddy, Jr. are entitled to qualified immunity.  Plaintiffs also fail to adequately plead their § 1983 conspiracy claim.  Thus, I dissent.

**I.**

I begin with Sanchez because dismissal of the claim against him necessarily resolves the claims against the others.  The majority reviews Sanchez's motion to dismiss on only one ground: whether Sanchez appropriately relied on the warrant in good faith.  *Ante*, at 14–15.  But Sanchez raises another argument in support of dismissal.  He says that even if we don't consider his alleged falsities and add his alleged omissions, probable cause still supports the warrant, so there is no Fourth Amendment violation.  (19-1857 Appellant's Br. at 19–25.)  The majority doesn't address this because it believes Sanchez forfeited the argument by not raising it below.  I disagree and believe that Sanchez did raise this argument below.  In connection with his motion to dismiss, Sanchez argued that the "undisputed facts, separate and apart from the ones Plaintiffs now dispute, provide an independent and adequate basis for a reasonable officer to make the same warrant requests that Lt. Sanchez made."  (No. 4:18-cv-12193, R. 17, Def.'s Reply Br. at PageID # 223.)[1]  So there was no forfeiture.  What's more, Sanchez is correct.  Even after removing the assertions Plaintiffs claim Sanchez falsified, and adding the facts he allegedly omitted, the affidavit still supports a finding of probable cause.

Plaintiffs' complaint against Sanchez doesn't specify which facts he allegedly falsified or omitted.  But as the majority notes, Plaintiffs moved to amend their complaint to do so.  And their briefing before this Court is consistent.  Plaintiffs claim Sanchez omitted the insurance investigator and landlord's investigation reports, both of which classify the cause of the fire as

---

[1]True, Sanchez didn't specifically make this argument until his reply in support of his motion to dismiss. But as the district court and the majority recognize, the complaint didn't specify which of the statements in Sanchez's affidavits were allegedly false and what he allegedly omitted; Plaintiffs' response to the motion to dismiss did.  So the reply was Sanchez's first chance to respond to these more specific allegations.

"undetermined." Next, they offer Mulka's affidavit as a rebuttal to the statements attributed to him in Sanchez's affidavits. Third, they acknowledge that Mr. Marvaso filed for bankruptcy in 2007 but claim that Sanchez's statement that Mr. Marvaso had been "in bankruptcy since 2007" was false. Finally, Plaintiffs say that Sanchez omitted information that Mr. Marvaso had recently built improvements at his restaurant and that charity poker tournaments were providing more revenue for the business.[2] Correcting for these alleged falsities and omissions yields the following sum of evidence.

First, the uncontested assertions in Sanchez's affidavits.[3] The Westland Police received tips that the fire was suspicious and most likely an arson fire, including Baldoni's statement based on what he heard from others "that people would be shocked if they knew the truth about the fire and [] Geo, the son of the bar's owner and other persons had placed leftover construction materials in the ceiling of the building and started the fire earlier in the morning." (No. 4:18-cv-12193, R. 7-1 at PageID # 53.) Additionally, there's Quigley's report to police that he observed two vehicles in the parking lot a couple of hours before the fire but after closing, as well as Adams's observation of Geo driving a car that matched the description of one of the vehicles. Plus, he concluded that the fire was started by an open flame applied by human hands to combustibles by someone with a key to the building. Also, Mr. Marvaso increased the insurance coverage on his businesses from $400,000 to $600,000 three to four months before the fire. Finally, the Marvasos kept their business records in their home, and Geo was the General Manager of the businesses and Gaines was responsible for payroll.

Next, Sanchez's alleged omissions—the insurance investigator and landlord's investigation reports, the recent building improvements, and the financial boost provided by

---

[2]Plaintiffs' allegations about Sanchez's improper omissions are effectively that Sanchez did not present *all* the information he possessed when he made his warrant application, so the resulting warrant is constitutionally infirm. But that's hardly the standard. Allegations of mistake or even negligence aren't enough. Rather, a § 1983 plaintiff suing a warrant applicant must plausibly allege "a deliberate falsehood or [] reckless disregard for the truth." *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003)). And this doesn't require warrant applicants to submit every fact they know about the case to the magistrate.

[3]Because Sanchez attached his affidavits to his motion to dismiss, and because "they are referred to in the Complaint and are central to the claims contained therein[,]" we can consider the contents of the affidavits in ruling on Sanchez's motion to dismiss. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

charity poker tournaments.   And while we can't consider Mr. Marvaso as having "been in bankruptcy since 2007," Plaintiffs concede that he declared bankruptcy in 2007.   Further, they don't contest that he was making monthly payments to satisfy his long-term debt and owed back property and business taxes to the City of Westland.**[4]**

True, Baldoni admitted that he didn't base his statement on first-hand knowledge.   But the rules of evidence don't apply to warrant proceedings.   So Baldoni's statement that the fire was an arson started by Geo provides at least some support for probable cause.   *See United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir. 2000).   And probable cause is further bolstered by Quigley and Adams placing the same suspect identified by Baldoni at the scene just before the fire started.   As Plaintiffs note, the National Fire Protection Association defines an "incendiary fire" as a fire that is "intentionally ignited under circumstances in which the person igniting the fire knows the fire should not be ignited."   (19-1857 Appellee's Br. at 25 n. 4.)   So Adams's report supports the probable cause finding.    That same association defines fires with an "undetermined" cause as "fires . . . that have been investigated . . . and have insufficient information to classify further."   Nat'l Fire Prot. Ass'n, NFPA 921: Guide for Fire and Explosion Investigations § 20.1.4 (2017).   Thus, the insurance investigator and landlord's reports simply show that there was insufficient evidence for them to reach a conclusion, hardly disproving that the fire was arson.   Regardless of Mr. Marvaso's motives for increasing his insurance policy, the fact that he did shows that there was an increased financial incentive for arson.   And even with the increased financial performance of Electric Stick because of charity poker, his debts provide the potential for a financial motive.   Finally, the Marvasos, Geo, and Gaines' keeping of business records at home links these properties to their potential involvement in the crime.

All in all, these facts leave "a fair probability" in the view of "reasonable and prudent men, not legal technicians[,]" "that contraband or evidence of [arson would] be found" in the homes Sanchez sought to search.   *See Illinois v. Gates*, 462 U.S. 213, 231, 238 (1983).   Probable cause is not "a neat set of legal rules."   *Id*. at 231.   But in a similar case, our sister circuit found probable cause when an officer relied on the fire marshal's conclusion that a fire was the result

---

**[4]**As the majority recognizes, we must assume the truth of Plaintiffs' assertion that Mulka's statements are false.  So we don't consider that evidence in evaluating probable cause.

of arson, an eyewitness account placed the arrestee's truck at the scene on the day of the fire, evidence existed that the arrestee possessed the requisite skill to commit arson, the arrestee had motive to commit arson, and the arrestee deceptively responded, during a polygraph examination, to questions about his involvement in the fire. *See generally Reed v. City of Chino*, 224 F. App'x 625 (9th Cir. 2007). So too here. That there was no later arrest does nothing to undermine probable cause at the time of the warrant application. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) ("Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge *at the time*[.]" (emphasis added)). And because there was probable cause for the search warrant even without Sanchez's alleged falsities and omissions, it cannot be said that "but for these falsities the judge would not have issued the warrant." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). There is thus no constitutional violation. And with no constitutional violation, Sanchez is entitled to qualified immunity. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011).

## II.

Turning next to Adams and Reddy, Jr., they too are entitled to qualified immunity. When a complaint fails to plausibly allege facts that, taken as true, "show the violation of a right so clearly established that a reasonable official would necessarily have recognized the violation[,]" dismissal based on qualified immunity is appropriate. *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir. 2019). As Plaintiffs concede, they bear the burden of overcoming qualified immunity by showing that the alleged statutory or constitutional violation was clearly established at the time of the violation. (19-1882 Appellee's Br. at 18 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).) But they fail to cite any cases showing that a conspiracy that leads to an unconstitutional search by a third party was a clearly established statutory or constitutional violation when Adams, Reddy, Jr., and Reddy, Sr. allegedly conspired. Instead, they simply state the qualified immunity standard, provide no application to the facts here, and move on. (19-1882 Appellee's Br. at 17–19.)

As this court said in *Kollaritsch*, "[t]he Supreme Court has been emphatic and explicit in what it means by 'clearly established[.]'" 944 F.3d at 626.

[T]he legal principle [must] clearly prohibit the offic[ial]'s conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. . . . [C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the offic[ial]'s conduct does not follow immediately from the conclusion that the rule was firmly established.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Providing zero case support hardly satisfies this high burden. So Adams and Reddy, Jr. are entitled to qualified immunity.

The majority says this presents fact-intensive questions and requires factual development beyond what's in the complaint, and that we should thus wait until summary judgment to decide these claims. *Ante*, at 11–12. But this isn't a factual question. We accept the facts in Plaintiffs' complaint as true and look only to whether those facts amounted to a clearly established constitutional violation when they occurred. *Ante*, at 7–8; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). And that's a question of law, which is why we can review it on an interlocutory appeal. *Johnson v. Jones*, 515 U.S. 304, 317 (1995); *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011). No discovery or further factual development can cure Plaintiffs' failure to plead "the violation of a right so clearly established that a reasonable official would necessarily have recognized" it. *Kollaritsch*, 944 F.3d at 626. So Adams and Reddy, Jr. are entitled to qualified immunity at the motion to dismiss stage of this case.

But that's not the only reason the district court erred in denying Adams and Reddy, Jr.'s motion to dismiss. Plaintiffs also fail to adequately plead a § 1983 conspiracy claim against them. A civil conspiracy requires a single plan, where each alleged coconspirator shares in the general conspiratorial objective, and an overt act committed in furtherance of the conspiracy that causes injury to the plaintiff. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). Under 42 U.S.C. § 1983, the plaintiff's injury must be a violation of federal law. Appellees concede that their only injury is the allegedly unconstitutional search warrants executed by Sanchez. (19-1882 Appellee's Br. at 25 ("The 'injury' suffered by Plaintiffs was the illegal search by Defendant Sanchez, which was proximately caused by the conspiracy and Adams' overt falsification of the fire report to indicate that the fire was intentionally set.").) And as discussed

above, there was no unconstitutional search conducted by Sanchez because the search warrants he procured were supported by probable cause. Thus, Appellees fail to state a claim upon which relief can be granted because they fail to plead an adequate injury.

What's more, Plaintiffs also fail to adequately plead proximate cause. As Plaintiffs recognize, the Supreme Court has read § 1983 "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). This means that traditional legal principles such as but-for and proximate causation apply to § 1983 claims when a plaintiff alleges that the defendant caused them to be harmed (rather than direct harm inflicted by the defendant). *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). And that's what Plaintiffs here allege. They don't claim that Defendants' conspiracy itself violated any federal right. Instead, they claim that Adams's filing of his report caused the Michigan State Police to engage in an unconstitutional search of their homes.

"[C]ourts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct." *Powers*, 501 F.3d at 609. Plaintiffs' complaint against Adams, Reddy, Jr., and Reddy, Sr. does not detail why Sanchez's search of Plaintiffs' homes was allegedly unconstitutional. But their complaint against Sanchez explains that it is because he allegedly submitted a knowingly false affidavit in support of his search warrant for their homes. (No. 4:18-cv-12193, R. 1, Compl. at PageID # 12–13.) Whatever the merits of Plaintiffs' conspiracy claims against Adams, Reddy, Jr., and Reddy, Sr., it was not foreseeable that their conspiracy would trigger a Michigan State Police Lieutenant to deliberately falsify claims unrelated to their conspiracy in an affidavit in support of a search warrant. *See, e.g.*, *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1549 (2017) (remanding the issue of whether it was foreseeable that a police shooting would result from a warrantless search of a home but questioning the lower court's holding that it was); *Powers*, 501 F.3d at 610 ("[E]ven if it is foreseeable that a defendant's conduct will lead to the complained of harm, a defendant may be able to avoid § 1983 liability by pointing to the intervening action of a [third party] as the proximate cause of the plaintiff's injury."). The majority concedes that when a defendant puts

forth "uncontroverted evidence of a superseding cause that cuts off the otherwise foreseeable chain of causation," the pleadings are insufficient. *Ante*, at 10. And that's what Defendants have done here. Sanchez's actions were a superseding cause of Plaintiffs' injury, so proximate cause is lacking.

Because Plaintiffs fail to adequately plead their § 1983 conspiracy claim against Adams and Reddy, Jr., and because Plaintiffs fail to satisfy their burden of showing that Adams and Reddy, Jr.'s alleged conspiracy amounted to a clearly established statutory or constitutional violation when they allegedly conspired, the district court erred in denying their motion to dismiss.

## III.

Last, Reddy, Sr. I agree that he is not entitled to qualified immunity because he is not a public official, even though he qualifies as a state actor for § 1983 liability. *See Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000); *Vector Rsch., Inc. v. Howard & Howard Att'ys P.C.*, 76 F.3d 692, 698 (6th Cir. 1996) ("[A] party who is not a public official may be liable under 42 U.S.C. § 1983 and yet not be entitled to qualified immunity because, if not a public official, the reason for affording qualified immunity does not exist."). That said, the district court still erred in denying his motion to dismiss because Plaintiffs fail to adequately plead a § 1983 conspiracy claim against him for the same reasons they fail to adequately plead the same claim against Adams and Reddy, Jr.

The majority concludes that we don't have jurisdiction over his appeal because qualified immunity isn't involved. *Ante*, at 6–7. But "whether a particular complaint sufficiently alleges a clearly established violation of law . . . is both 'inextricably intertwined with, and 'directly implicated by,' the qualified-immunity defense," so we have pendent jurisdiction over challenges to the sufficiency of the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). The majority acknowledges this and says: "Two claims are 'inextricably intertwined' if deciding one necessarily decides the other." *Ante*, at 7 n.1 (citing *Vakilian*, 335 F.3d at 521.). Because resolution of Adams and Reddy, Jr.'s appeal also resolves Reddy, Sr.'s, we have jurisdiction over both.

**IV.**

The standard to survive a motion to dismiss is admittedly a low bar. But that doesn't mean courts must bend over backwards to save a plaintiff's meritless claims. Yet that's what the majority does here. I respectfully dissent.