RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JEFF COURTRIGHT,

*Plaintiff-Appellee,*

*v.*

No. 15-1722

CITY OF BATTLE CREEK; CRAIG WOLF and TODD
RATHJEN, in their individual and official capacities,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:14-cv-01297—Robert J. Jonker, District Judge.

Argued: March 9, 2016

Decided and Filed: October 14, 2016

Before: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Paul D. Hudson, MILLER, CANFIELD, PADDOCK AND STONE, PLC,
Kalamazoo, Michigan, for Appellants. Shawn C. Cabot, CHRISTOPHER TRAINOR
& ASSOCIATES, White Lake, Michigan, for Appellee. **ON BRIEF:** Paul D. Hudson,
MILLER, CANFIELD, PADDOCK AND STONE, PLC, Kalamazoo, Michigan, Brad H. Sysol,
BATTLE CREEK CITY ATTORNEY'S OFFICE, Battle Creek, Michigan, for Appellants.
Shawn C. Cabot, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for
Appellee.

1

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Prompted by a phone tip, the Battle Creek Police Department dispatched two of its police officers, defendants Craig Wolf and Todd Rathjen, to a local hotel, leading to the arrest of plaintiff Jeff Courtright.  Courtright then filed this 42 U.S.C. § 1983 suit against Officer Wolf, Officer Rathjen, and the City of Battle Creek, alleging claims of excessive force, false arrest, and municipal liability.  The defendants filed a motion to dismiss all claims against them, but the district court denied the motion.  The defendants now seek relief on interlocutory appeal, contending that they are entitled to qualified immunity on the excessive-force and false-arrest claims and that the municipal-liability claim fails as a matter of law.  Because Courtright alleged a plausible claim that the officers violated his clearly established constitutional rights, we affirm the district court's denial of the motion to dismiss the excessive-force and false-arrest claims.  We also dismiss, for lack of jurisdiction, the appeal of the district court's denial of the motion to dismiss the municipal-liability claim.

### FACTUAL AND PROCEDURAL BACKGROUND

In response to a phone tip that Courtright had "come out of his room [at the Traveler's Inn] with a gun and threatened to shoot" the dog of "another resident" at the hotel, Wolf and Rathjen were dispatched to the Traveler's Inn.  In his complaint, Courtright averred that he "was nowhere near his room when the alleged incident was said to have taken place," that he "attempted to tell Defendant Wolf that he was not in his room at the time the incident allegedly occurred, but was visiting friends," and that he further attempted to tell Wolf that he did not "leav[e] his room with a gun and threaten[] to shoot any animal."  Wolf nevertheless arrested Courtright for felonious assault.  In handcuffing Courtright in the course of the arrest, Wolf and Rathjen "forcefully grabbed Plaintiff's arms and pulled them behind Plaintiff's back," even though Courtright had told the officers that prior rotator cuff injuries and shoulder surgeries precluded him from placing his hands behind his back.  Courtright repeatedly complained of pain to the officers after he was handcuffed, but neither officer "did anything to alleviate Plaintiff's

pain." Though Courtright was jailed overnight, the prosecutor declined to issue a warrant, and Courtright was released the next day.

Subsequently, Courtright sued Wolf, Rathjen, and the City of Battle Creek, alleging use of excessive force by Wolf and Rathjen in violation of the Fourth Amendment and 42 U.S.C. § 1983 (Count I); false arrest by Wolf in violation of the Fourth Amendment and § 1983 (Count II); false arrest and false imprisonment by Wolf under state law (Count III); and municipal liability on the part of the City of Battle Creek under § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (Count IV).

The defendants moved to dismiss all four counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court declined to exercise supplemental jurisdiction over the state-law claims (Count III) and denied the motion with respect to the plaintiff's federal-law claims (Counts I, II, and IV), rejecting the officers' qualified-immunity defense. The district court reasoned that the federal excessive-force and false-arrest claims were "thin," but that there was "enough to kick the case forward into at least the basic discovery process," and that it was "okay to keep [the municipal liability] claim alive for now so that we can at least see if there's any potential for the plaintiff to flesh out what they claim in terms of policy and practice." The defendants filed an interlocutory appeal of the district court's denial of their motion to dismiss on Counts I, II, and IV.

## DISCUSSION

Although most denials of motions to dismiss are non-final orders that do not fall within Congress's statutory grant of appellate jurisdiction, *see* 28 U.S.C. § 1291, "a limited set of district-court orders are reviewable 'though short of final judgment.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (internal citation omitted). Pursuant to the collateral-order doctrine, "a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291." *Id.* at 672 (internal citation omitted). We therefore have appellate jurisdiction over the district court's order denying the motion to dismiss based on qualified immunity. *Id.*; *see also Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011).

"When a defendant appeals the denial of a motion to dismiss based on qualified immunity, we review de novo whether the complaint alleges violation of a clearly established constitutional right." *Heyne*, 655 F.3d at 562. In reviewing the motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *see also Heyne*, 655 F.3d at 562-63. "No heightened pleading requirement applies" to our review of a motion to dismiss based on qualified immunity. *Heyne*, 655 F.3d at 562; *see also Back v. Hall*, 537 F.3d 552, 555-56 (6th Cir. 2008).

To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The plaintiff also must allege with particularity "facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne*, 655 F.3d at 564 (internal citations and quotation marks omitted). Ultimately, the plaintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity. *Johnson*, 790 F.3d at 653. "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne*, 655 F.3d at 562-63.

Although "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery," *Johnson*, 790 F.3d at 653, we also have cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). We clarified, "Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433-34 (internal marks and citations omitted).

We apply this circuit's "'two-tiered inquiry'" in reviewing the dismissal of a claim on qualified-immunity grounds. *Id.* at 428 (quoting *Martin v. City of Broadview Heights*, 712 F.3d

951, 957 (6th Cir. 2013)).  "The first step is to determine if the facts alleged make out a violation of a constitutional right.  The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin*, 712 F.3d at 957 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  "These two steps may be addressed in any order[,] [b]ut both must be answered in the affirmative" for the plaintiff's claim to proceed.  *Id.* (citing *Pearson*, 555 U.S. at 236).  If either step is not satisfied, then qualified immunity shields the government officer from civil damages.  *Id.*

## I.  Excessive Force (Count I)[1]

We have held that "excessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment" and that "freedom from excessively forceful or unduly tight handcuffing is a clearly established right for purposes of qualified immunity." *Baynes v. Cleland*, 799 F.3d 600, 613-14 (6th Cir. 2015); *see also Marvin v. City of Taylor*, 509 F.3d 234, 247 (6th Cir. 2007) ("an excessive force claim can be premised on handcuffing, i.e., the right not to be handcuffed in an objectively unreasonable manner was clearly established").  To plead successfully a claim of excessively forceful handcuffing, the plaintiff must allege physical injury from the handcuffing.  "[W]hen there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001).

The extent of the physical injury suffered by the plaintiff need not be severe in order to sustain the excessive-force claim.  *See Morrison v. Bd. of Trs.*, 583 F.3d 394, 402 (6th Cir. 2009) ("the injury required to sustain a successful handcuffing claim is not as demanding as [the

---

[1]In denying the motion to dismiss the excessive-force claim, the district court concluded, citing *Crooks v. Hamilton County*, 458 F. App'x 548 (6th Cir. 2012) (unpublished) and *Dixon v. Donald*, 291 F. App'x 759 (6th Cir. 2008) (unpublished), that "repeated claims of pain from a person who informed police of a specific medical problem that police ignored is at least enough to keep the case alive past Rule 12(b)(6)."  On appeal, citing *Dixon* and *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993), Courtright similarly argues that the analysis for an excessive-force claim is different in the case of a plaintiff with "a specific medical problem."

In response, the defendants argue only that Courtright did not allege physical injury from his handcuffing, whereas the plaintiffs in *Crooks*, *Dixon*, and *Walton* did.  Because we conclude, as we discuss in this section, that Courtright *did* plead physical injury in his complaint and that he thus stated a plausible excessive-force claim that survives the motion to dismiss, we need not address whether the excessive-force analysis is different for plaintiffs with "specific medical problem[s]."

defendant] would suggest."). For example, in *Morrison*, we found that allegations of bruising, wrist marks, and "attendant pain" suffered by the plaintiff while she was handcuffed were sufficient to allow the plaintiff's excessive-force claim to proceed past summary judgment. *Id.* at 403. In so finding, we cited our decision in *Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997), in which we reversed a grant of qualified immunity on a claim of excessively forceful handcuffing where the plaintiff alleged merely that the handcuffing caused numbness and swelling in his hands. *Id.* at 402-03.

Here, Courtright's allegations of physical injury from handcuffing are admittedly sparse. Indeed, the thrust of the defendants' argument is that Courtright's factual allegations do not plead physical injury and that the excessive-force claim therefore must be dismissed. The defendants, for example, argue that Courtright's factual allegations are "nearly identical" to those in *Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580 (6th Cir. 2005), in which we upheld a grant of qualified immunity because the plaintiff did not allege physical injury from the handcuffing. However, the plaintiff in *Kahlich* stated during a deposition that he was not physically injured by virtue of being handcuffed, 120 F. App'x at 584, whereas no such facts exist in Courtright's case. Moreover, *Kahlich*, as well as all other cases the defendants cite to support the dismissal of the excessive-force claim for failure to plead physical injury, arose at the *summary-judgment* stage, not at the motion-to-dismiss stage.

At the motion-to-dismiss stage, we are required to draw all reasonable inferences in favor of Courtright. *See Directv, Inc.*, 487 F.3d at 476. Courtright pleaded in his complaint that he suffered from prior rotator-cuff injuries and shoulder surgeries, that he could not put his hands behind his back because of his medical condition, *and that he suffered from pain* after he was handcuffed behind his back. Viewing the allegations in the complaint in the light most favorable to Courtright, we reasonably may infer that he was handcuffed in a manner that aggravated his prior medical injuries, that he suffered pain from that handcuffing, and that he thus was physically injured by the handcuffing. That Courtright did not allege that he continued to suffer injury after his handcuffs were removed does not preclude the survival of his excessive-force claim. *See Morrison*, 583 F.3d at 402 (discussing *Martin*, 106 F.3d at 1312-13).

Defendants protest that "the pleading standards require more than a wispy suggestion of an injury 'and/or' the 'reasonable inference' of one" and that Courtright pleaded only conclusory allegations of pain that should be disregarded. To be sure, Courtright's allegation that "[a]s a result of Defendants' unlawful actions and/or inactions, Plaintiff suffered injuries and damages" is a conclusory recitation of an element of his claim that is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") However, Courtright's allegations that he had prior medical injuries that precluded him from being handcuffed behind his back and that he suffered pain from his arms being pulled behind him are *not* of the conclusory ilk that we ignore while evaluating a motion to dismiss. Taken as a whole, and considered in the light most favorable to Courtright, the factual allegations in the complaint state a plausible excessive-force claim.

Having failed to establish that Courtright's factual allegations did not plausibly allege the violation of a constitutional right, the defendants argue, in the alternative, that it was not clearly established that handcuffing *without* physically injuring the suspect constitutes excessive force. The premise of this argument is flawed. As discussed, Courtright *did* suffer physical injury: he suffered pain as a result of the manner in which he was handcuffed. Moreover, the relevant clearly established right in our circuit is "freedom from excessively forceful or unduly tight handcuffing." *Baynes*, 799 F.3d at 613. "Requiring any more particularity than this would contravene the Supreme Court's explicit rulings that neither a 'materially similar,' 'fundamentally similar,' or 'case directly on point'—let alone a factually identical case—is required, and that the specific acts or conduct at issue need not previously have been found unconstitutional for a right to be clearly established law." *Id.* at 614 (internal citation omitted). Therefore, we affirm the district court's order denying the motion to dismiss the excessive-force claim based on qualified immunity.

## II.     False Arrest (Count II)

In their second issue on appeal, the defendants argue that the district court wrongly denied qualified immunity on Courtright's claim that he was arrested without probable cause. The constitutional right to "freedom from arrest in the absence of probable cause" is clearly

established within our circuit. *Wesley*, 779 F.3d at 428. Therefore, to survive the motion to dismiss, Courtright must allege facts that make out a plausible violation of that constitutional right, *i.e.* that his arrest was unsupported by probable cause. *Id.* at 429. In particular, because Courtright brings his false-arrest claim only against Wolf, Courtright must allege facts that demonstrate that Wolf arrested him without probable cause. *See Heyne*, 655 F.3d at 564. We conclude that he has done so here.

A police officer has probable cause for arrest if, at the time the officer makes the arrest, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Wesley*, 779 F.3d at 429 (citing *Beck*, 379 U.S. at 91). In other words, probable cause exists only when the police officer "discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (citing *Beck*, 379 U.S. at 91). "A probable cause determination is based on the 'totality of the circumstances,' and must take account of 'both the inculpatory *and* exculpatory evidence'" then within the knowledge of the arresting officer. *Wesley*, 779 F.3d at 429 (quoting *Gardenhire*, 205 F.3d at 318). Thus, if the officer discovers information or evidence favorable to the accused in the course of an investigation, the officer "'cannot simply turn a blind eye.'" *Id.* (quoting *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999)). Rather, that information or evidence must enter into the totality-of-the-circumstances analysis to determine whether there is probable cause for arrest. *Id.* Moreover, the probable-cause determination must be based on the information that the arresting officer had when he made the arrest, "rather than with the 20/20 vision of hindsight."[2] *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (internal citations and quotation marks omitted).

The crux of the issue in this case is whether the phone call to the police stating "that [Courtright] had come out of his room with a gun and threatened to shoot another resident's dog" was sufficient to establish probable cause for Courtright's arrest. Citing *Ahlers*, the defendants

---

[2]Contrary to Courtright's contentions, the fact that Courtright ultimately was not charged for the offense by itself does not negate the existence of probable cause for an arrest.

argue that the phone call was an eyewitness identification sufficient to establish probable cause. In *Ahlers*, we held that because "eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." *Ahlers*, 188 F.3d at 370. Courtright, on the other hand, argues that under *Gardenhire*, the phone call was an individual's "mere allegation" of criminal activity that "may [have] create[d] reasonable suspicion justifying an investigative stop under [*Terry v. Ohio*, 392 U.S. 1 (1968)], but [fell] short of creating probable cause absent some corroborating evidence of wrongdoing." *Wesley*, 779 F.3d at 429 (discussing *Gardenhire*); *see also Gardenhire*, 205 F.3d at 317 ("Consider the following situation: a woman flags down a police officer and points out a Porsche being driven by a young man, which the woman claims is her car and which has been stolen by the man. Would the officer have probable cause to arrest the Porsche's driver at that point? We think not."). Although there is "some tension" between the *Ahlers* and *Gardenhire* lines of cases, we recently clarified that "those cases also contain an important limiting factor: Probable cause is created only by eyewitness allegations that are *reasonably trustworthy*, and thus probable cause does *not* exist where there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection." *Wesley*, 779 F.3d at 429-30 (internal quotation marks and citation omitted).

We conclude that the phone call at issue here lacks the indicia of trustworthiness and reliability that accompanied the *Ahlers* eyewitness's information. First, although the allegations in the complaint suggest that the caller was another resident at the Traveler's Inn, there is no indication that the caller was an actual *eyewitness* to the crime. In *Ahlers*, the eyewitness was the victim of the relevant crime, and we found probable cause because she consistently identified her perpetrator during the course of several in-person interviews with the investigating officers. *Ahlers*, 188 F.3d at 367-68. Here, the "eyewitness" is an unidentified "[]other resident" at the Traveler's Inn who made a single phone call to the police.

Second, although there may be some instances in which a sufficiently reliable phone call to the police may provide *reasonable suspicion* for an investigatory stop, *Navarette v. California*, 134 S. Ct. 1683, 1688 (2014), we have not found any precedential case in which we concluded that a phone call, without any corroborating information, provided *probable cause* for arrest. *See*

*United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005) (phone call conveying "suspicious incident" at a neighboring residence coupled with the officers' discovery of a slightly ajar front door did not establish probable cause that burglary was underfoot). Even in *Ahlers*, we found that corroborating evidence "bolstered" the probable-cause determination. *Ahlers*, 188 F.3d at 370-71; *see also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 308 (6th Cir. 2005) (discussing *Ahlers*). Although the defendants correctly note that "independent corroboration of an informant's story is not *necessary* to a determination of probable cause," *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005) (emphasis added), the touchstone for probable cause is that the police officer possessed "reasonably reliable information that the suspect has committed a crime." *Gardenhire*, 205 F.3d at 318.

Viewing the allegations in the complaint in the light most favorable to Courtright, as we are required to do on a motion to dismiss, we find that the *only* information Wolf had prior to arresting Courtright was one phone call from "another resident." There is no indication in the pleadings that Courtright ever possessed a gun, that there was a dog staying at the Traveler's Inn that night, that Wolf attempted to conduct any sort of investigation once he got to the Traveler's Inn, or that there was any corroborating information at all to support Wolf's probable-cause determination. The Traveler's Inn phone call, by itself, was not enough to establish probable cause for an arrest.

At best, Wolf had reasonable suspicion for an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), at the time that he arrived at Courtright's room. Therefore, to legitimate an arrest of Courtright, Wolf would have needed to discover more information or evidence at the Traveler's Inn that would have established probable cause for an arrest. But, viewing the allegations in the complaint in the light most favorable to Courtright, there are no additional facts that would have provided a basis for a probable-cause determination.[3] Because Courtright stated a plausible claim that his arrest was unsupported by probable cause, he has alleged a violation of a clearly established constitutional right. We therefore affirm the district court's denial of the defendants' motion to dismiss the false-arrest claim based on qualified immunity.

---

[3]To be sure, such information may come to light through the discovery process, and it still remains possible that the claims Courtright asserts against the officers could be dismissed at the summary-judgment stage.

### III.    <u>Municipal Liability (Count IV)</u>

Lastly, the defendants appeal the district court's denial of the motion to dismiss Courtright's municipal-liability claim (Count IV).  The defendants argue that Courtright's municipal liability claim should be dismissed because the City cannot be liable under *Monell* absent a constitutional violation.  The defendants additionally argue that Courtright failed to plead facts supporting his claim.

Although "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision'" under the collateral-order doctrine, *Mitchell v. Forsyth*, 472 U.S. 511, 529 (1985), the denial of a municipal-liability claim is *not* immediately appealable under the collateral-order doctrine.  *Crockett v. Cumberland Coll.*, 316 F.3d 571, 578 (6th Cir. 2003).  "[U]nlike the qualified immunity entitlement, municipal defenses under § 1983 [do not entail] a right to immunity from trial but a 'mere defense to liability'" that is not "effectively lost" if a case erroneously is allowed to proceed.  *Summers v. Leis*, 368 F.3d 881, 888-89 (6th Cir. 2004) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 43 (1995) and *Mitchell*, 472 U.S. at 526).  Nevertheless, pursuant to principles of pendent appellate jurisdiction, we may exercise jurisdiction over the appeal of a municipal-liability claim if it is "'inextricably intertwined' with the qualified immunity analysis properly before the Court."  *Lane v. City of LaFollette*, 490 F.3d 410, 423 (6th Cir. 2007) (quoting *Crockett*, 316 F.3d at 578).  In such circumstances, "the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well."  *Mattox v. City of Forest Park*, 183 F.3d 515, 524 (6th Cir. 1999) (internal citation omitted).

The defendants urge us to exercise pendent appellate jurisdiction over the municipal-liability claim in this case because "the finding of nonexistence of a constitutional claim for immunity purposes necessarily decide[s] the whole case not only in favor of the officer, but also in favor of the [municipality] as well."  As discussed above, however, Courtright *did* allege a constitutional violation sufficient to survive the motion to dismiss, foreclosing the defendants' argument.  *See Martin*, 712 F.3d at 963 ("[I]n the face of a constitutional violation, we lack subject-matter jurisdiction to entertain an appeal of the municipal-liability claim because the only path to review the City's claim is foreclosed here.").

Moreover, the appeal of the municipal-liability issue and the appeal of the qualified-immunity issues are *not* inextricably intertwined, because resolution of the qualified-immunity issue would not necessarily resolve the municipal-liability issue. *See Mattox*, 183 F.3d at 524. The officers' liability depends on whether the force they used in handcuffing Courtright or their grounds for arresting Courtright violated his clearly established rights, whereas the City of Battle Creek's liability depends on its municipal policies, training programs, and customs. Because resolution of the officers' interlocutory appeal does not necessarily determine the City of Battle Creek's training and supervision obligations, we do not have jurisdiction to consider the City's municipal-liability appeal at this time. As a result, we must dismiss the defendants' appeal of the municipal-liability claim for lack of jurisdiction.

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's denial of the defendants' motion to dismiss the excessive-force and false-arrest claims based on qualified immunity. We DISMISS the defendant's appeal of the district court's denial of the motion to dismiss the municipal-liability claim for lack of jurisdiction at this time.