NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0091n.06

No. 25-1656

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

GENERIS ENTERTAINMENT, LLC,

    Plaintiff - Appellee,

v.

MARY ANNE DONLEY, sued in her official capacity,

    Defendant,

BLAKE BITNER, in his personal and official capacities,

    Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 19, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

---

Before: BATCHELDER, CLAY, and RITZ, Circuit Judges.

CLAY, J., delivered the opinion of the court in which RITZ, J., concurred. BATCHELDER, J. (pp. 14–22), delivered a separate dissenting opinion.

**CLAY, Circuit Judge.** Defendant State Trooper Blake Bitner performed a warrantless search of the bar and restaurant owned by Plaintiff Generis Entertainment. Trooper Bitner asserted that he searched the bar as part of an administrative liquor licensing inspection, but Generis claims that the administrative justification was a ruse and that, in actuality, Trooper Bitner undertook his warrantless search in order to uncover evidence relating to a crime committed by one of Generis' former employees.

Generis sued Trooper Bitner, claiming that he used the liquor inspection as a pretext to conduct a criminal investigatory search without a warrant in violation of the Fourth Amendment. Before the district court, Trooper Bitner moved to dismiss this claim, arguing that qualified

immunity shielded him from liability because there is no clearly established law prohibiting his actions. The district court denied his motion to dismiss. For the reasons explained below, we **AFFIRM** the district court.

## I. BACKGROUND

Because this case comes to us on an appeal of a denial of a motion to dismiss, "we recite the facts as they are alleged in the complaint." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 937 (6th Cir. 2024).

Plaintiff Generis Entertainment, LLC operates as "Retro Rocks," a licensed restaurant and bar in Saginaw, Michigan. During the time giving rise to the facts of this complaint, Generis employed a man named Joshua Munger. Munger worked a shift at the bar from the evening of October 1, 2023, into the early morning of October 2, 2023. Unbeknownst to Generis, Munger "was stealing and consuming alcohol products" during this shift.

While driving home from the shift, Munger crashed his car into a boulder and a parked truck. Michigan State Trooper Blake Bitner arrived at the scene and performed a field sobriety test, which Munger failed. Munger's blood alcohol levels also tested at 0.418 g/100 mL—over five times the legal limit. Trooper Bitner ultimately arrested Munger. After Generis "learn[ed] of the extent of [Munger's] wrongful and unauthorized actions," it terminated his employment. Am Compl., R. 17, Page ID #128.

"On or about October 25 or 26, 2023," Trooper Bitner contacted a Generis employee and asked to be given access to Generis' premises; he also asked the employee to give him business records and recordings. *Id.* at Page ID #129. On "what [Generis] believed to be" Friday, October 27, Trooper Bitner arrived at Retro Rocks "uninvited and unplanned." *Id.* at Page ID #129–30.

According to the allegations in Plaintiff's complaint, Trooper Bitner "stated in words or substance" that "since he was going to be present for his criminal investigation, he might as well do all of it and added a warrantless licensed premises inspection." *Id.* at Page ID #130. Plaintiff contends that this "warrantless licensed-premises inspection was a pretext" that was "designed to get access to records and information for a criminal investigation without securing a warrant as required by the Fourth Amendment." *Id.*

According to the complaint, "[w]ithin moments of starting the warrantless licensed premises inspection," Trooper Bitner "demanded" that Generis produce information and records relating to Munger, including his clock-in and clock-out times on October 2, 2023, the time period relevant to the criminal investigation of Munger. *Id.* at Page ID #131. Generis contends that a demand for these types of records is not part of a routine warrantless licensed-premises inspection. Generis told Trooper Bitner that he needed to procure a warrant before the business would hand over any of these types of records or information.

Trooper Bitner "became displeased" and told Generis that its refusal to provide the requested information and records constituted a liquor code violation, which Generis would be cited for. *Id.* at Page ID #132. He then stated that, due to Generis's refusal to cooperate, he "was *also* going to conduct a liquor inspection while" there and proceeded to do so. *Id.* (cleaned up). Generis did not interfere with the remainder of Trooper Bitner's search.

After Trooper Bitner left the premises, he obtained a warrant and returned to Retro Rocks that same day at 6 pm to execute it. Plaintiff contends that Trooper Bitner decided to execute the warrant at that time, during the busy Friday dinner rush, because it was "the most obstructive, intrusive, inconvenient, and costly time of the business week for a restaurant," and Trooper Bitner

intended to retaliate against Generis for refusing to comply with his warrantless investigation. *Id.* at Page ID #133–34.

Generis contends that Bitner further retaliated by referring it to the enforcement division of the Michigan Liquor Control Commission (MLCC). *Id.* at Page ID #134. As a result of this referral, the MLCC issued several license violation charges against Generis, all of which stemmed from Trooper Bitner's October 27 inspection. These violations were for: (1) allowing Munger to consume alcohol while working at Retro Rocks in violation of MCL 436.1707(2); (2) allowing Munger to be on Retro Rocks' premises while intoxicated in violation of MCL 436.1707(3); (3) failing to cooperate with law enforcement and/or obstructing law enforcement during an investigation conducted pursuant to the Michigan Liquor Control Code in violation of MCL 436.1217 and Rule 436.1011(4); and (4) failing to make required records available for inspection during Trooper Bitner's investigation in violation of MCL 436.1217(3).

After it received these charges, Generis brought suit under 42 U.S.C. § 1983 against Trooper Bitner, in his official and personal capacities, and various MLCC officials, including MLCC director of enforcement Mary Anne Donley. This appeal relates only to the Count I[1] charges against Trooper Bitner. Under that count, Generis alleges that Trooper Bitner's "warrantless search and attempted seizure of information and business records" under the guise of a licensing inspection "was pretextual and undertaken for the true purpose of searching for evidence to establish . . . Munger's criminal law violations." *Id.* at Page ID #137.[2] Generis contends that Trooper Bitner's actions violated its Fourth Amendment rights under clearly

---

[1] Generis brought a total of five counts against both Defendants.

[2] Generis also contends, in Count I, that, in her official capacity, Mary Anne Donley enforces a "warrantless inspection scheme that authorizes a pretextual search" in violation of the Fourth Amendment. *Id.* at Page ID #137. The allegations against Donley are not relevant to this appeal.

established precedent, which forbids the government from using an administrative inspection scheme as a pretext to search for criminal violations. *See New York v. Burger*, 482 U.S. 691, 724 (1987). (Brennan, J., dissenting) (Noting that, "[i]n the law of administrative searches, one principle emerges with unusual clarity and unanimous acceptance: the government may not use an administrative inspection scheme to search for criminal violations.").

Trooper Bitner moved to dismiss Generis' complaint, arguing, in relevant part, that qualified immunity shielded him from suit because the liquor inspection search was not pretextual and no clearly established law placed him on notice that his conduct was unlawful, as is required to sustain a personal capacity suit under § 1983. The district denied Trooper Bitner's demand for qualified immunity, [3] finding that Generis had plausibly alleged a pretextual use of inspection authority for criminal investigation and that this violated clearly established law.

Trooper Bitner now appeals the denial of qualified immunity.

## II. DISCUSSION

### A. Standard of Review

We review *de novo* an appeal of the district court's denial of a motion to dismiss based on qualified immunity. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). We "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* at 518.

---

[3] The district court dismissed Counts II, III, and IV of the complaint in their entirety. The only remaining claims in this suit are Counts I (relevant to this appeal) and Count V.

**B. Analysis**

We may exercise jurisdiction over appeals of qualified immunity only if the appeal "turns on an issue of law." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 333 (6th Cir. 2010) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005)). A defendant entitled to invoke qualified immunity "may not appeal a district court's . . . order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–320 (1995). "[T]o the extent that the denial of qualified immunity is based on a factual dispute, such a denial falls outside of the narrow jurisdiction of this Court." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008) (citations omitted). We find that the denial of qualified immunity in this case is not based on a factual dispute and thus proceed to the legal merits of Defendant's appeal.

Qualified immunity protects government officials from personal civil liability under § 1983 unless the plaintiff can show that (1) the official violated a statutory or constitutional right and (2) the unlawfulness of their conduct was clearly established at the time of the official's act. *Reich v. City of Elizabethtown*, 945 F.3d 968, 977 (6th Cir. 2019). Even if the plaintiff makes this showing, the defendant is still entitled to qualified immunity if his violative conduct was based on a reasonable mistake or misunderstanding as to what the law required. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

In reviewing a district court's denial of qualified immunity, the "test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Courtright,* 839 F.3d at 518 (citation modified). Under this standard, we hold that Plaintiff has alleged sufficient facts to deny Trooper Bitner's claim for qualified immunity at this stage of the proceeding.

### 1. Clearly Established Right

We begin by assessing whether there was a clearly established rule stating that Trooper Bitner's warrantless search of Retro Rocks was unconstitutional at the time it occurred. The "clearly established" standard requires that the rule establishing a constitutional right be "settled," meaning that it is "dictated by controlling authority" and not merely "suggested by then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified). The controlling precedent must also be "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

There is clearly established law stating that private businesses like Retro Rocks have a right to be free of warrantless administrative searches that are motivated only by the purpose of investigating criminal wrongdoing. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A search is generally unreasonable if it is not conducted pursuant to a warrant issued upon probable cause. *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 528–29 (1967). This general rule "applies to commercial premises as well as homes," *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978), and protects business owners' reasonable expectations of privacy in their commercial property, *Burger*, 482 U.S. at 699. Operators of "commercial premises in a 'closely regulated' industry," however, "[have] a reduced expectation of privacy" under the Fourth Amendment. *Id.* at 702. An establishment like Retro Rocks that serves alcohol is one such commercial premises operating in a closely regulated industry. *See Russo v. Massullo*, Nos. 90-3240, 90-3241, 1991 WL 27420, at *4 (6th Cir. Mar. 5, 1991).

However, the government does not have the right to warrantlessly search the commercial premises of these types of businesses without any constraints. According to the Supreme Court,

warrantless administrative searches of closely regulated industries fall outside of the Fourth Amendment's warrant requirement only where "the 'primary purpose' of the searches is '[d]istinguishable from the general interest in crime control.'" *City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015) (citation omitted). When a search is undertaken to "further the regulatory scheme" governing the industry, the purpose of that search is not crime control. *Burger*, 482 U.S. at 702 (quoting *Donovan v. Dewey,* 452 U.S. 594, 600 (1981) (cleaned up). Accordingly, this 'administrative search exception' to the warrant requirement "do[es] not apply where the officer's purpose" in undertaking a search "is not to attend to . . . the investigation for which the administrative inspection is justified." *Ashcroft v. al-Kidd*, 563 U.S. 731, 736–37 (2011). Indeed, the Supreme Court has explicitly expressed concern that administrative searches should not be used as a ruse or pretext to investigate criminal activity. *Burger*, 482 U.S. at 716 n.27 (observing that the challenged inspection was constitutional because there was "no reason to believe" it was pretext for a solely penal investigation).

We clarified the administrative search exception requirements in *Liberty Coins, LLC v. Goodman*, where we held that a search is exempt from the Fourth Amendment warrant requirement when it "is conducted for a 'special need'"—such as to enforce "reasonable legislative or administrative standards"—"other than to investigate criminal wrongdoing." 880 F.3d 274, 280 (6th Cir. 2018) (quoting *Camara*, 387 U.S. at 538). Therefore, if the true purpose of a search is not administrative but is instead to investigate a crime, that search is not conducted for the sort of "special need" that would exempt it from the warrant requirement. Between our precedent and precedent from the Supreme Court, this right is "settled" and "dictated by controlling authority," *Wesby*, 583 U.S. at 63 (citations omitted): the administrative search exception does not apply if the search is motivated by the purpose of conducting a criminal investigation.

Contrary to Defendant's contention, this rule is not defined at an impermissibly "high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam). Defendant appears to believe that, to be defined with the appropriate degree of specificity, the rule must state something akin to: "an officer, who arrested a licensee's employee for drunk driving and who suspected that the employee consumed alcohol during the employee's work shift, may [not] later use an administrative search to request records specific to that employee when the administrative code provides for such an inspection and prohibits the consumption of alcohol by an employee while on the licensed premises under State law." Appellant Br. at 23. In the same vein, the dissent suggests that to find a clearly established right for purposes of this case, there must be a rule explicitly stating that it is unconstitutional for an officer to "use the warrantless administrative search to investigate a crime committed by . . . an *unrelated third party*," since Trooper Bitner was allegedly attempting to investigate a crime committed by Munger, not Generis itself. Dis. at 21. But these arguments are mistaken. For a law to be clearly established, "we do not require an earlier decision that is 'directly on point'" or that is on all fours with the facts of the instant case. *McElhaney v. Williams*, 81 F.4th 550, 556–57 (6th Cir. 2023) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Rather, we determine that a right is clearly established if the "'existing precedent' . . . place[s] the contours of the right 'beyond debate.'" *Id.* The caselaw is clear that an officer violates the Fourth Amendment when he pretextually uses an administrative search for no reason other than to conduct a criminal investigation without a warrant. That rule does not need to account for every possible factual contingency that could arise in the administrative search context to put Trooper Bitner on notice that his actions were illegal.

Defendant further argues that there is no clearly established rule stating it is unlawful for an officer to use an administrative search scheme as a pretext to investigate a crime where the

search behavior he engages in to investigate the crime is also allowed by an administrative scheme. Our dissenting colleague appears to agree, writing that closely regulated businesses have no expectation of privacy in information and records if a regulatory inspection scheme might justify an administrative search of those records. *See* Dis. at 19. This argument is also off base. The Supreme Court has acknowledged that "an administrative scheme may have the same ultimate purpose as penal laws." *Burger*, 482 U.S. at 713 (1987). But that does not mean that every search undertaken for the purpose of investigating criminal laws that could also be justified by an administrative inspection scheme is exempt from the warrant requirement. This is because, contrary to the dissent's assertion, closely regulated businesses *do* have an expectation of privacy even where a regulatory scheme might allow an administrative search. *Burger* and its progeny are clear that if an inspection is not made pursuant to a regulatory scheme that serves a substantial government interest, the administrative search exception does not apply. *See Burger*, 482 U.S. at 702. That is why courts interrogate the *purpose* with which an officer undertook the search—if the search was not made with the purpose to "further the regulatory scheme" but rather to look for evidence of a crime, the search is not made pursuant to a regulatory scheme and a warrant is required. *Id.* at 702–03 (citation modified); *see also Watson v. Abington Twp.*, 478 F.3d 144, 152 (3d Cir. 2007) ("[T]he closely regulated industry exception to the general rule requiring a warrant to search a property requires . . . that the search or seizure actually be carried out in accordance with a regulatory scheme that provides a constitutionally adequate substitute for a warrant.").

Accordingly, for all the reasons explained above, it is clearly established that a search conducted for the purpose of investigating criminal activity does not qualify for the administrative

search exception.[4]  If an officer wants to search for evidence of a crime unrelated to a regulatory purpose, he must comply with the Fourth Amendment's warrant requirement.

### 2. Fourth Amendment Violation

Plaintiff thus defeats Trooper Bitner's motion to dismiss on qualified immunity grounds if its complaint has alleged sufficient facts to plausibly make the case that Trooper Bitner violated its constitutional right to be free of pretextual warrantless administrative searches that are motivated only by the purpose of investigating a crime.  Accepting the well-pleaded factual allegations in the complaint as true and drawing all inferences in Plaintiff's favor, Plaintiff has plausibly alleged a Fourth Amendment violation.

To determine if an officer undertook an administrative search for pretextual reasons, courts must assess the officer's subjective intent and "actual motivations" for effecting the search.  *See al-Kidd*, 563 U.S. at 736.  Plaintiff contends that Trooper Bitner's actual motivations in performing the premises inspection were not administrative or programmatic, but to "get access to records and information for a criminal investigation."  Am. Compl., R.17, Page ID #130.

The complaint alleges well-pleaded facts that plausibly support this claim.  First, the allegations plausibly make the case that Trooper Bitner's subjective intent in visiting Retro Rocks was to further his criminal investigation into Munger.[5]  After all, Bitner only mentioned that he

---

[4] We also note that the Supreme Court has said that a generalized, nonspecific search like a roadside checkpoint violates the Fourth Amendment where its "primary purpose is indistinguishable from the general interest in crime control." *City of Indianapolis v. Edmond*, 531 U.S. 32, 32 (2000) (syllabus); *see also Patel*, 576 U.S. at 420.  The corollary of this statement is that if the primary purpose of a warrantless search is crime control, it may still violate the Fourth Amendment even if the search is undertaken with some amount of purpose to also enforce a regulatory inspection scheme.  Accordingly, the more technically correct way to phrase the rule may be that a search conducted solely or primarily to investigate criminal activity does not qualify for the administrative search exception.

[5] *See* Am. Compl., R. 17, Page ID #130 ("[T]he warrantless licensed-premises inspection was a pretext and was designed to get access to records and information for a criminal investigation . . ."); *id* at Page ID #131 ("Within moments of starting the warrantless licensed premises inspection, [Defendant] revealed his *true* purpose – he demanded warrantless production information and records on one of Generis' former employees . . . It was self-evident [that] this request for records and information was regarding Munger and not part of any regular warrantless licensed-

would do a liquor inspection after he had requested records that Plaintiff says related to Munger's crimes. As described in the complaint, "[w]ithin moments of starting the warrantless licensed premises inspection," Trooper Bitner demanded "records and information" regarding Munger that were "not part of any regular warrantless licensed-premises inspection." *Id.* at Page ID #131. According to the complaint, after Plaintiff refused to warrantlessly produce the records relating to the criminal investigation, Trooper Bitner proceeded to complete what he claimed was a warrantless licensed-premises inspection of Retro Rocks. Keeping in mind that we must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein," we may infer that Trooper Bitner undertook the remainder of the inspection simply as a means to search for evidence relating to the criminal investigation in an attempt to perform an end-run around Plaintiff's refusal to comply with his initial request for warrantless document production. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996). If those facts are true, Trooper Bitner's actions violated the Fourth Amendment.

Defendant and our dissenting colleague again insist that we cannot find that Trooper Bitner used the administrative search as an instrument of criminal law because his search actions could have been justified by "Michigan's Liquor Control Code," meaning that "[Plaintiff] has no expectation of privacy . . . in the information and records that Trooper Bitner requested."[6] Dis. at 14. They point to the fact that administrative charges were ultimately brought as evidence that this

---

premises inspection but was a search for information and records . . . to continue the criminal investigation") (emphasis added); *see id.* at Page ID #137 ("[t]he warrantless search and attempted seizure of information and business records by Defendant . . . was pretextual and undertaken for the true purpose of searching for evidence to establish former employee Munger's criminal law violations.").

[6] Defendant points to the fact that MCL 436.1217(3) states that, under the liquor license inspection scheme, a "duly authorized agent of the commission may examine or copy the books, records, or papers of a person relative to a requirement pertaining to this act" as evidence that Trooper Bitner was permitted to use the administrative inspection scheme to search for records relating to Munger, a former employee.

objective programmatic purpose for the search existed. The defense and dissent thus effectively ask us to allow the "administrative exception . . . to swallow the whole Fourth Amendment" by holding that an officer is *always* immune from liability if he can devise some sort of plausible ex-post administrative justification for a pretextual, warrantless criminal investigative search. *Rodriguez v. City of Cleveland*, 439 F. App'x 433, 463 (6th Cir. 2011) (White, J., concurring).

But that is not how the administrative search exception works. The determination about whether Trooper Bitner violated Plaintiff's Fourth Amendment rights depends on his purpose in undertaking the search—not simply if his search could have been authorized by an administrative scheme. *See al-Kidd*, 563 U.S. at 736. And for all the reasons stated above, Plaintiff's complaint alleges enough facts—at this stage of the proceedings—to reasonably infer that Trooper Bitner's motivation was to investigate Munger's crime and that he used the licensing inspection as a pretext to do so. As the district court accurately pointed out, there may very well be rationale "justify[ing] Bitner's conduct" in performing the administrative search, but "based on the materials permissibly available for adjudicating a Rule 12(b)(6) motion . . . plaintiff has stated a valid claim for a violation of its constitutional rights under the Fourth Amendment." *Generis Ent., LLC v. Donley*, 790 F. Supp. 3d 628, 655–56 (E.D. Mich. 2025).

### III. CONCLUSION

We thus hold that, at this stage in the proceeding, Defendant is not entitled to qualified immunity on Count I and **AFFIRM** the district court.

**ALICE M. BATCHELDER, Circuit Judge, dissenting.** Does the Complaint state a valid claim that Trooper Bitner violated the Plaintiff bar owner's clearly established Fourth Amendment rights? No. At least as I see it, Plaintiff Generis Entertainment did not have a Fourth Amendment right to the information Trooper Bitner requested and, even if it did, Trooper Bitner did not violate the Fourth Amendment by asking for that information and, even if he had, the law concerning that right (or that violation) was not clearly established. I would hold that Trooper Bitner is entitled to qualified immunity in this case and dismiss the claims against him.

My first thought is that, due to the Plaintiff's liquor license and Michigan's Liquor Control Code, *see* M.C.L. § 436.1217, the Plaintiff bar owner has no expectation of privacy (i.e., Fourth Amendment right) in the information and records that Trooper Bitner requested. *See City of Los Angeles v. Patel*, 576 U.S. 409, 424 (2015) (explaining that the sale of liquor "ha[s] such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor . . . of such an enterprise" (quotation marks, editorial marks, and citations omitted)).

But even if an expectation of privacy is unnecessary for this peculiar Fourth Amendment right, which my colleagues describe as the Plaintiff bar owner's "right to be free of pretextual warrantless administrative searches that are motivated only by the purpose of investigating a crime," *see* Maj. Op, the Complaint does not state facts (or even conclusory accusations) that would show a violation of that right. Nor can I see how that right is clearly established.

Because this appeal stems from the denial of a motion to dismiss (based on qualified immunity), the language of the Plaintiff bar owner's Complaint is essential to our review, so the Complaint's facts and accusations warrant a summary. According to the Complaint, Joshua Munger was an employee who, "[u]nbeknownst to Plaintiff, . . . was stealing and consuming alcohol" while working a shift on the night in question, October 1-2, 2023, then crashed his car

after leaving work, admitted to Trooper Bitner that he had been drinking, failed a field sobriety test, and had a blood-alcohol content of 0.418 g/100 mL, well above the legal limit. R. 17, PgID 127-28, First Amd. Complaint, ¶¶ 12-20. The Plaintiff "suspended Munger from his position and later terminated [his employment] after learning of the extent of his wrongful and unauthorized actions." *Id.* at ¶ 21. Also according to the Complaint, "Munger was stealing from Plaintiff" and as "the victim of employee theft, Plaintiff . . . was and is a crime victim of Munger's illegal actions." *Id.* at ¶¶ 22, 24.

The Complaint goes on to say that, on or about October 27, 2003 (some three weeks after Munger's car crash), Trooper Bitner entered the Plaintiff's bar during business hours and "demanded warrantless production [of] information and records on one of [the Plaintiff's] former employees who worked on October 2, 2023 [i.e., Munger] including [1] his schedule and [2] when his clock-in, clock-out times were." *Id.* at ¶¶ 28, 36. The Plaintiff's employees refused to provide Trooper Bitner with either of those two requested items of information unless and until he obtained and produced a search warrant. *Id.* at ¶¶ 40, 43. According to the Complaint, Trooper Bitner told the Plaintiff's employees that their refusal to provide the requested information was a "liquor control code violation," *id.* at ¶ 40, and he conducted a "warrantless licensed premises inspection," *id.* at ¶¶ 31, 33, 36, 37, 38, 44 (which the Complaint also refers to as a "liquor inspection," *id.* at ¶¶ 32, 41), pursuant to M.C.L. § 436.1217 and Michigan Rule 436.1011, *id.* at ¶¶ 50-55.

The Complaint contends (in Count V, which is not before us in this appeal) that Michigan's warrantless-inspection scheme is unconstitutional, but the Complaint does not claim (or even suggest) that Trooper Bitner's inspection exceeded the scheme in any way other than in his request for Munger's [1] schedule and [2] October 1-2 clock-in and clock-out times. Rather, the Complaint states that the Plaintiff's "employees allowed and did not attempt to halt the rest of [Trooper

Bitner]'s warrantless licensed-premises inspection" and "in no way interfered with the rest of the unannounced, unscheduled licensed-premises inspection." *Id*. at ¶¶ 44 and 43. To be very clear, the Plaintiff's Complaint does not accuse Trooper Bitner of violating the Fourth Amendment in any way other than by his request for Munger's (1) work schedule and (2) clock-in/clock-out times. After the inspection, Trooper Bitner obtained a search warrant, "presumably from the local Saginaw County District Court," and returned to execute that warrant the same day (October 27). *Id*. at ¶¶ 45-46. The Complaint does not say, but presumably the Plaintiff's employees complied with the warrant and produced Munger's (1) work schedule and (2) clock-in/clock-out times.

Ultimately, Trooper Bitner referred the results of his investigation to the Michigan Liquor Control Commission (MLCC) "for further investigation and administrative charges," and, according to the Complaint, the MLCC's Director of Enforcement "issued license-violation charges against Plaintiff . . . for failing to cooperate with . . . and/or obstruct[ing] law enforcement officers in the course of their investigation . . . and [for] failing to make required records available for warrantless inspection." *Id*. at ¶ 50, 2. But, as the lead opinion also acknowledges, that recitation of the charges is incomplete. The MLCC charged the Plaintiff with four violations of the Michigan Liquor Control Code—the Plaintiff: (1) allowed Munger to consume alcohol on the job, M.C.L. § 436.1707(2); (2) allowed Munger to be at the bar while intoxicated, § 436.1707(3); (3) failed to cooperate with and/or obstructed law enforcement during an investigation conducted pursuant to the Code, § 436.1217 and Rule 436.1011(4); and (4) failed to make records available for inspection during Trooper Bitner's investigation, § 436.1217(3). R. 17-1, PgID 152. According to the district court, "the state administrative law judge has adjourned that proceeding until [the district court] decides the constitutional" challenge in Count V. R. 39, PgID 523.

In Count I, the Complaint accused Trooper Bitner of violating the Fourth Amendment, that being—to use my colleagues' language—the Plaintiff bar owner's "right to be free of pretextual warrantless administrative searches that are motivated only by the purpose of investigating a crime." The Count I claim is that Trooper Bitner violated that right by requesting Munger's work schedule and clock-in/clock-out times, because that request "was pretextual and undertaken for the true purpose of searching for evidence to establish former employee Munger's criminal law violations that occurred nearly a month before and nearly three miles away." R. 17, PgID 137, ¶ 61. The Complaint was a little more specific in the fact section, where it said that Trooper Bitner's "primary purpose for presenting himself to the [Plaintiff's bar] premises was to advance his criminal investigation regarding Munger's criminal actions and vehicle crash that occurred on October 2, 2023 nearly three miles away." R. 17, ¶ 30; *see also*, ¶¶ 33, 35, 37, 44.

The Complaint never names the crime that Munger allegedly committed and that Trooper Bitner was allegedly investigating, though from the reference to the car crash, the Complaint is most likely referring to a drunk-driving crime. The Complaint never says that, but if it means some other crime, it never says that either.[1] If Trooper Bitner had been investigating Munger for some *other* crime—e.g., murder, child pornography, wire fraud—and had searched or seized the Plaintiff's records under the purported authority of the Code's warrantless-inspection scheme, then it would be fair to label that action a pretextual warrantless administrative search motivated only by the purpose of investigating an unrelated crime. But if, as is most reasonably inferred from the Complaint, the Plaintiff's claim is that Trooper Bitner was there to investigate Munger for drunk driving, that falls directly within the purpose of Michigan's Liquor Control Code, *see* M.C.L.

---

[1] To be sure, the Complaint asserts that "Munger was stealing from Plaintiff" on the night in question, and, as "the victim of employee theft, [the] Plaintiff . . . was and is a crime victim of Munger's illegal actions." *Id*. at ¶¶ 22, 24. That is the only other crime mentioned in the Complaint. But obviously, the Plaintiff cannot mean that crime.

§ 436.1707(3) (an "employee of a licensee, shall not be in an intoxicated condition on the licensed premises"), and the purpose of the warrantless-search scheme, M.C.L. § 436.1217. Moreover, as long as Trooper Bitner was investigating the Plaintiff's employee's act of drunk driving immediately after his shift at the Plaintiff's bar, there is no way that Trooper Bitner conducted the search "*only*" for the purpose of investigating a crime and not a Code violation.

That attempt to label the crime reveals another problem with the facts of this case as stated in the Complaint. Trooper Bitner did not search or seize Plaintiff's records for Munger's work schedule and clock-in/clock-out times. Trooper Bitner *asked* for those records. The Plaintiff's employees refused, but they might have consented and provided the records. People consent to searches every day. *See Patel*, 576 U.S. at 422 ("the great majority of businessmen can be expected in normal course to consent to inspection without warrant" (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 316 (1978)). A police officer does not violate the Fourth Amendment by asking someone to consent to a search, even a search of a home, much less a search of business records for which the criminal suspect (here Munger) has no right to privacy. According to the Complaint, the Plaintiff's employees refused to consent to Trooper Bitner's request, so Trooper Bitner obtained a warrant. There is no conceivable way that Trooper Bitner—or any police officer anywhere in the United States—could have or would have thought that he was violating the Fourth Amendment by asking someone to consent to a search. This alone is enough for qualified immunity. *See King v. City of Rockford*, 97 F.4th 379, 390 (6th Cir. 2024) ("Qualified immunity shields officers from civil liability when their conduct does not violate clearly established statutory or constitutional rights *of which a reasonable person would have known*." (quotation marks omitted; emphasis added) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018))).

To be sure, the Plaintiff claimed in the Complaint that Trooper Bitner retaliated because the Plaintiff's employees refused to provide the requested records, but the district court rejected that accusation and dismissed the retaliation claims (Counts II-IV) because the Plaintiff could not show that Trooper Bitner's actions rose to the level of retaliation. R. 39, PgID 556-57. Moreover, I cannot see how a police officer's threat to carry out an otherwise legitimate investigation affects the Fourth Amendment analysis, much less turns a reasonable request for consent into a per se Fourth Amendment violation. Imagine an officer who says to a suspect, "If you do not (consent to) show me your pass, I will investigate you for trespassing," or "If you do not show me your car's registration, I will investigate you for car theft," or "If you do not provide a DNA sample, I will investigate you for this crime." Are those statements all Fourth-Amendment violations?

Before moving on, there is another deficiency in the Complaint. There is no claim of harm, other than this odd retaliation claim, which, to repeat, the district court expressly rejected. The Complaint does not allege that the Plaintiff suffered any injury from Trooper Bitner's rebuffed request to see the Plaintiff's records of Munger's work schedule and clock-in/clock-out times.

So, to sum up so far, the Complaint does not claim that Trooper Bitner conducted a search rather than a request to consent to a search; does not claim that Trooper Bitner exceeded the scope of a warrantless licensed-premises inspection as authorized by Michigan law; and does not claim that the Plaintiff suffered any harm or injury from Trooper Bitner's request. And, under the present facts, I question whether the Plaintiff even has an expectation of privacy in those records.

Typically, for a plaintiff to establish that a police officer violated his Fourth Amendment rights, the plaintiff must show that he had a legitimate or reasonable expectation of privacy in the place or thing to be searched. *United States v. Rogers*, 97 F.4th 1038, 1041 (6th Cir. 2024); *United States v. Miller*, 982 F.3d 412, 426 (6th Cir. 2020). Here, any expectation of privacy in the

information that Trooper Bitner requested (i.e., Munger's work schedule and clock-in/clock-out times) is undermined, and possibly destroyed, by the Michigan Liquor Control Code statutes that allow for a warrantless search and seizure of those records. "Evidence of a violation of [the Code] or rules promulgated under [the Code] discovered [during an investigation] may be seized and used in an administrative or court proceeding." M.C.L. § 436.1217(2). Munger's consumption of alcohol and intoxication during his shift at the Plaintiff's bar were violations of the Code.[2] Consequently, the Code permitted Trooper Bitner, as a law-enforcement officer investigating that violation, to examine or copy books, records, or papers concerning Munger's actions that night, "relative to a requirement pertaining to this act." M.C.L. § 436.1217(3).

But even if the Fourth Amendment right as stated—i.e., a "right to be free of pretextual warrantless administrative searches that are motivated only by the purpose of investigating a crime"—is a correct statement of the law, I cannot agree that it was clearly established here.

In each of the cases cited to support this right, the police used the warrantless administrative scheme to investigate the business *owner* regarding the unrelated (or tangentially related) crime. My colleagues cite cases in which the police used the warrantless administrative scheme to investigate a junkyard owner for auto theft, *New York v. Burger*, 482 U.S. 691 (1987), investigate a coin shop owner for stolen property, *Liberty Coins, LLC v. Goodman*, 880 F.3d 274 (6th Cir. 2018), and investigate and harass a bar owner for alleged illegality, *Watson v. Abington Twp.*, 478 F.3d 144 (3d Cir. 2007). The district court also cited cases in which the police used a warrantless

---

[2] In *Patel*, 576 U.S. at 424, the Court distinguished a hotel's expectation to privacy (in its records about its guests) from a bar owner's records (about its employees). "Over the past 45 years, the Court has identified only four industries that have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise. . . . *Unlike liquor sales*, . . . nothing inherent in the operation of hotels poses a clear and significant risk to the public welfare." *Id*. (quotation marks and citations omitted; emphasis added).

traffic-stop scheme to investigate car drivers, *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000), and big-rig truckers, *United States v. Orozco*, 858 F.3d 1204 (9th Cir. 2017).

But the Plaintiff's Complaint does not accuse Trooper Bitner of using the warrantless scheme to investigate the Plaintiff, the Plaintiff's business, or the Plaintiff's owner; the Complaint says, repeatedly, that Trooper Bitner attempted to use the warrantless administrative search to investigate a crime committed by Joshua Munger, an *unrelated third party*—who had already been fired due to his unauthorized drinking and theft. R. 17, PgID 128-29. It might be improper for a police officer use the Liquor Control Code's warrantless administrative scheme to investigate an unrelated third party, but the cited cases do not say that, much less clearly establish it.

On the other hand, it might be *permissible* for a police officer to use the warrantless administrative scheme to investigate an unrelated third party concerning an unrelated crime, despite the pretext. The cases do not say. In fact, it might be permissible, based on the facts, for a police officer to conduct a pretextual warrantless administrative search that is motivated only by the purpose of investigating a crime. Courts have suggested as much by granting qualified immunity to officers who have done so. *See Salem v. City of Akron*, 448 F. Supp. 3d 793, 808 (N.D. Ohio 2020) (granting qualified immunity to police who entered and searched a bar without a warrant, despite their pretextual motivations); *Drakes Collision, Inc. v. Auto Club Grp. Ins. Co.*, 2020 WL 7021697, at *11 (E.D. Mich. Nov. 30, 2020) (granting qualified immunity to police who conducted a warrantless search of a collision company's records, pursuant to a Michigan warrantless-search statute, even though "the primary purpose of the search was to detect evidence of ordinary criminal wrongdoing" (quotation marks omitted)). That, like the other reasons here, is enough on its own to grant qualified immunity to Trooper Bitner: "If judges thus disagree on a

constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999).

I would grant Trooper Bitner qualified immunity on the Plaintiff's claim of a Fourth Amendment violation. Because the majority sees this differently, I respectfully dissent.